UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN GRAVES, and
ANTHONY KROPINSKI, individuals,

        Plaintiffs,

v

THE DEPARTMENT OF VETERAN AFFAIRS, and
JOHN D. DINGELL VETERAN ADMINSTRATION
MEDICAL CENTER, and PAMELA REEVES, M.D.,
and GLENN KAATZ, M.D., Jointly and Severally,

        Defendants.

Case No. 2:13-cv-14140
Judge: Stephan J. Murphy
Magistrate:

---

SHEREEF H. AKEEL (P54345)
S. Hussain Akbar (P67967)
Akeel & Valentine, PLC
Attorneys for Plaintiffs
888 West Big Beaver Road, Suite 910
Troy, MI  48084-4736
(248) 269-9595
shereef@akeelvalentine.com

BARBARA L. McQUADE
United States Attorney
Lynn M. Dodge (P38136)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0205
lynn.dodge@usdoj.gov

---

**FIRST AMENDED COMPLAINT AND RELIANCE ON JURY DEMAND**

---

NOW COME Plaintiffs, JUSTIN GRAVES and ANTHONY KROPINSKI, by and through their undersigned counsel, Akeel & Valentine, PLC, and for their First Amended Complaint[1] against THE DEPARTMENT OF VETERAN AFFAIRS, and JOHN D. DINGELL VETERAN ADMINSTRATION MEDICAL CENTER, and PAMELA REEVES, M.D., and

---

[1] Plaintiffs hereby rely on the Jury Demand filed with their Original Complaint. (Doc. #1).

GLENN KAATZ, M.D., Jointly and Severally (hereinafter collectively "Defendants") states as follows:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff, JUSTIN GRAVES (hereinafter "JUSTIN") is a resident of the State of Michigan.

2. Plaintiff, ANTHONY KROPINSKI (hereinafter "TONY") is a resident of the State of Michigan.

3. Defendant, THE DEPARTMENT OF VETERAN AFFAIRS (hereinafter "VA"), is a branch of the Federal Government.

4. Defendant, JOHN D. DINGELL VETERAN ADMINSTRATION MEDICAL CENTER (hereinafter "JDDVAMC"), is VA administered facility located at: 4646 John R St., in the City of Detroit, Wayne County, Michigan.

5. Upon information and belief, Defendant, PAMELA REEVES, M.D., (hereinafter "REEVES"), is a resident of the State of Michigan and is being sued in her individual and official capacities.

6. REEVES is the Medical Center Director of the JDDVAMC.

7. Upon information and belief, Defendant, GLENN KAATZ, M.D., (hereinafter "KAATZ"), is a resident of the State of Michigan, and is being sued in his individual and official capacities.

8. At all relevant times, KAATZ was the supervisor of Plaintiffs, and the Associate Chief of Staff, Research at JDDVAMC.

9. This Honorable Court has jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1346, 28 U.S.C. § 1331, 5 USC § 706 (2)(A), its supplemental jurisdiction under 28 U.S.C. §

1367, and through *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

10. This action, also, seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § § 2201-02, Fed. R. Civ. P. 57 and 65, and pursuant to the general, legal, and equitable powers of this Court.

11. The unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

12. Venue is proper under 42 U.S.C. § 1391(e) as to all Defendants because Defendants are officers of agencies of the United States sued in their official capacity and because this judicial district is where all Plaintiffs reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

13. Plaintiffs repeat and re-allege the foregoing paragraphs, as though fully set forth herein

14. Plaintiffs were formally appointed to their positions through a VA appointment letter dated May 20, 2012, as Biological Science Techs, GS-404-5, Step 1. (**Exhibit A** – Appointment Letter).

15. Plaintiffs' appointment and employment were to be for approximately two years. (**Exhibit A**).

16. Plaintiffs were paid by Defendant VA.

17. Within a few months of working for Defendants VA and JDDVAMC, Plaintiffs were hired they were, also, accepted into the American Federation of Government Employees ("AFGE" or "Union").

18. Plaintiffs worked in a laboratory at the JDDVAMC on a research grant.

19. The research grant's primary investigator was non-party Dr. Christian Kreipke.

20. Plaintiffs received glowing performance appraisals from KAATZ.

21. On May 17, 2012, Defendant JDDVAMC instituted a "research misconduct" investigation of Dr. Kreipke.

22. The research misconduct Investigation at the VA was controlled by the VA Handbook 1058.2.

23. The VA Handbook has a section on "Research Misconduct." (**Exhibit B** – VA Handbook 1058.2, Research Misconduct).

24. VA Handbook 1058.2 Section 8b, states that VA employees are to cooperate in "good faith" with research misconduct reviews.

25. On, or about, August 15, 2012, Defendant JDDVAMC instituted a formal investigation panel in to the allegations against Dr. Kreipke. (hereinafter the "AIB").

26. After the AIB was instituted, Defendants, and Defendants' employees, began a concerted effort to create a hostile work environment for Plaintiffs, and anyone else associated with Dr. Kreipke's lab.

27. Plaintiffs were informed that they would have to appear before the AIB to provide testimony regarding Dr. Kreipke's lab, and allegations of research misconduct.

28. During this time, prior to their testimony, Plaintiffs were subjected to a hostile work environment.

29. Upon information and belief, the intent of Defendants was to intimidate Plaintiffs into complying with Defendants' goal to find Dr. Kreipke guilty of research misconduct.

30. This hostile work environment included, but was not limited to:

    a.    On September 11, 2012, Defendants, and/or their employees, made false claims regarding Plaintiffs and their involvement in the destruction of other researchers' equipment and experiments.

    b.    On, or about, September 12, 2012, Plaintiffs computers were confiscated by Defendants, and/or Defendants' employees, based on an allegation that they were related to the case against Dr. Kreipke. However, no replacement computers were provided, leading to an inability to work on the project. Plaintiffs were forced to work in the library due to inadequate resources. On multiple occasions they requested computers and none were provided. No other employees were subjected to this type of environment.

    c.    During this time, in September of 2012, Plaintiffs were warehoused in a small office, with temperatures often exceeding 80 degrees, with no access to their computers, data, or any ability to continue their experiments.

    d.    On October 17, 2012, Defendants, and Defendants' employees, brought an individual to the JDDVAMC, a Mr. Christian Reynolds, who started the proceedings against Dr. Kreipke, and who had previously threatened individuals in Plaintiffs' lab with physical harm, in order to harass and intimidate Plaintiffs.

31. Under the VA Handbook (Sections 5.e, and 8.b), and VA Regulation 38 CFR 0.735-12(b), Plaintiffs were asked to testify in front of the AIB.[2]

32. Eventually a date was set for Plaintiffs testimony.

33. Plaintiffs were to testify on October 29, 2012.

34. At that time, Plaintiffs were initially denied Union representation.

35. Plaintiffs refused to testify without Union representation.

36. This refusal angered Defendants, and Defendants' employees,.

37. Plaintiffs demanded a Union representative of their own choice.

38. Plaintiffs eventually received Union representation of their own choice.

---

[2] VA Regulation 38 CFR 0.735-12(b), states "Employees will furnish information and *testify freely and honestly* in cases respecting employment and disciplinary matters. Refusal to testify, concealment of material facts, or willfully inaccurate testimony in connection with an investigation or hearing may be ground for disciplinary action. An employee, however, *will not be required* to give testimony against himself or herself in any matter in which there is an indication that he or she may be or is involved in a violation of law wherein there is a possibility of self-incrimination." (Emphasis Added).

39. Plaintiffs' Union representative informed Plaintiffs that the Union was never informed that an AIB had been created to investigate Dr. Kreipke.

40. Plaintiffs did testify on November 1, 2012.

41. Plaintiffs' act of testifying in front of the AIB is a protected activity, as stated in the VA Handbook 1058.2, Sections 5.f, 5.p, and 8.c.

42. Plaintiffs testified truthfully.

43. Plaintiffs' testimony was not damaging to Dr. Kreipke.

44. Plaintiffs' testimony was damaging to Defendants in several ways, including but not limited to:

   a. Plaintiffs disclosed the bias of the original "Informant," Christian Reynolds, against Dr. Kreipke, including his threats to kill Dr. Kreipke, and his stated desire to destroy Dr. Kreipke. This directly underlined Mr. Reynolds inherent bias in this matter.

   b. Plaintiffs disclosed the mismanagement of the lab by its prior principal investigator, Dr. Jose Rafols. Plaintiffs' disclosure directly undermined the alleged research misconduct violations, and strongly implicated Dr. Rafols. Amazingly Dr. Rafols was never interviewed by the AIB.

   c. Plaintiffs disclosed lies that they were told by Defendants and/or other Defendants' employees, and unfair treatment they had been subjected to merely because of their association with Dr. Kreipke.

   d. Plaintiffs disclosed that they had their computers, data, and equipment confiscated, and were no longer able to conduct work on their experiments. This was clearly against the policy in the VA Handbook, which states that the work on the grant is to continue during the research misconduct investigation.

   e. Plaintiffs disclosed their fear of being terminated as a result of their inability to conduct appropriate work on their grant.

   f. Plaintiffs also disclosed their fear that they would be terminated as a result of providing truthful testimony. Sadly, this was the real reason Plaintiffs were terminated.

    g.    Plaintiffs disclosed several conflicts of interest that existed in the AIB. This was against the VA Handbook, which required any individuals with apparent or actual conflicts of interest to be excluded from eligibility to sit on the AIB.

45. Defendants' employees were hostile towards Plaintiffs during the interview.

46. Defendants' employees also appeared angered by Plaintiffs' testimony when they did not implicate Dr. Kreipke in any wrongdoing concerning the research misconduct investigation, but instead testified truthfully.

47. During the interviews, Defendants' employees began treating Plaintiffs in a hostile manner by accusing them of many acts, including but not limited to:

    a.    Plaintiff JUSTIN was wrongfully accused of inappropriately sharing data with unauthorized collaborators.

    b.    Plaintiffs were wrongfully accused of inappropriately viewing Dr. Kreipke's grant proposals and applications, which are considered confidential and outside the scope of their job duties.

    c.    Plaintiffs were wrongfully accused of having inappropriate knowledge of the claims against Dr. Kreipke, which were to remain confidential and were not to be disclosed to anyone outside the AIB, other than Dr. Kreipke himself.

    d.    Indeed, Plaintiff JUSTIN was told, in the interview, that he needed to defend himself, and the same was implied to Plaintiff TONY. This is despite the fact that they were not the subject of the AIB investigation.

    e.    Defendant's employees or agents, implied that Plaintiffs should look out for themselves and provide testimony consistent with the allegations levied against Dr. Kreipke in a conversation with Plaintiff Graves.

48. Defendants, and their employees, attempted to, also, exert pressure on Plaintiffs to lie, or provide untruthful testimony, in more than of the following ways:

    a.    First, Defendants, and its employees, would attempt to manipulate or change Plaintiffs' testimony when repeated back to Plaintiffs to try to incriminate Dr. Kreipke. This manipulated testimony was, untruthful and amounted to perjury;

7

    b.    When Plaintiffs repeatedly attempted to correct the manipulations and twisting of their testimony by Defendant and its employees, Defendant and its' employees would then begin accusing Plaintiffs of improper conduct and advising Plaintiffs to look out from themselves.

49. After providing truthful testimony and refusing to have their testimony manipulated, Plaintiffs were subjected to retaliation that created an even more hostile work environment, and eventual termination.

50. After providing truthful testimony, Plaintiffs complained about Defendants refusal to allow them to continue to work on the grant and the resulting waste of government resources and taxpayer funds.

51. These complaints included, but were not limited to:

    a.    confiscation of their lab equipment, data, and computers without any replacements being made;

    b.    specifically being instructed by their supervisors to halt all work, despite continuing to be paid; and

    c.    not being able to order the supplies necessary for their grant work to continue.

52. As a result of their truthful testimony, participation in the research misconduct investigation and inquiry, and their complaints regarding the waste of government resources and taxpayer funds; Plaintiffs' were retaliated against, and said retaliation, included, but was not limited to:

    a.    Plaintiffs' confidential documents were left in plain sight by Defendants and/or Defendants' employees (allowing for breaches of the confidentiality agreements that were signed by Plaintiffs at their interview with the investigation board).

    b.    In January 2013 Plaintiffs met with Defendant KAATZ to try and resolve the work place retaliation they were suffering through an informal grievance procedure action. This attempt failed as the suggested remedies

        by Defendant KAATZ, as stated in his January 27, 2013 Memorandum, were unsatisfactory.

    c.    As a result, on February 5, 2013, a "Step Two" formal administrative grievance was filed by Plaintiffs with Defendant KAATZ and Defendant REEVES, naming Defendant KAATZ. On the very next day Defendant KAATZ issued an email, regarding the investigation of attendance spanning from July 2012, through January 2013. This was in direct retaliation for filing the grievance and Defendant KAATZ gave Plaintiffs 24 hours to respond in writing to his accusations regarding lack of attendance.

    d.    On February 13, 2013, Defendant REEVES summarily rejected this grievance claiming the remedies requested were excluded by the VA Handbook 5021.

53. Plaintiffs repeatedly reported and complained to Defendant VA through their supervisor Defendant KAATZ, and the VA Police Supervisor, Det. Friendly, when they reported and complained about the retaliatory conduct, hostile work environment, and comments to which they were subjected, as outlined above.

54. Plaintiffs' reports and complaints of the retaliatory conduct and comments to which they were subjected, fell on deaf ears and Defendants took no corrective action to remedy the hostile environment.

55. On March 18, 2013, Defendants terminated Plaintiffs using the pretext that there was a lack of work. (**Exhibit C** – Termination letter).

56. This was despite the fact that the grant Plaintiffs were working on was still active.

57. This was despite the fact that, upon information and belief, the grant Plaintiffs were working on was to remain active (and Defendants continued to receive funds from the federal government) until at least October of 2013.

58. This was despite the fact that Plaintiffs' had admirable work product, performance appraisals, and patience in the face of said hostile work environment.

59. As stated above, the real reason Defendant VA, and its employees, retaliated and terminated Plaintiffs was because of their truthful testimony in the research misconduct case against Dr. Kreipke.

60. After being terminated, on April 1, 2013, Plaintiffs filed a second formal grievance, based on the retaliation they had suffered and its culmination in their termination.

61. In a Memorandum dated April 2, 2013, Plaintiffs were informed, by Defendant REEVES, that their grievance was rejected as "terminations of temporary appointments are excluded from coverage under the grievance procedure."

62. This pre-textual rejection completely ignored Plaintiffs grievances related to the retaliation and hostile work environment, as raised in the second formal grievance.

63. Later that same month, Plaintiffs contacted the JDDVAMC human resources department and were informed that they had no grievance, or appeal, rights under the VA Handbook.

64. In May of 2013, Plaintiffs contacted the Merit Systems Protection Board. ("MSPB"), and were informed that they had no right to pursue any claims through it.

65. Defendants by and through their conduct, subjected Plaintiffs to emotional and psychological harm.

66. As a result of Defendants' conduct as outlined above Plaintiffs have incurred economic and non-economic damages.

67. As a result of Defendants' conduct as outlined above, Plaintiffs have incurred damage to their professional reputation, and employment prospects.

68. As a direct and proximate cause of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages, including but not limited to: loss of earnings and earning

capacity, loss of career opportunities, loss of goodwill, harm to their professional reputation, loss of esteem and standing in the research community, humiliation and embarrassment, mental and emotional distress, and loss of ordinary pleasures of life.

## COUNT I

### FIRST AMENDMENT - FREEDOM OF SPEECH
### Against individual Defendants

69. Plaintiffs reallege and incorporate the allegations of the preceding paragraphs, as if fully set forth herein.

70. Upon information and belief, after Plaintiffs' testimony in the research misconduct hearings, Defendants KAATZ and REEVES were infuriated, and began to retaliate against Plaintiffs in direct violation of the VA policies and procedures, as outlined above, in the VA Handbook.

71. Upon information and belief, Plaintiffs' complaints regarding the retaliation they faced for their truthful testimony further infuriated Defendants KAATZ and REEVES who increased their retaliation against Plaintiffs and refused to allow Plaintiffs to continue their work on the grant.

72. Plaintiff's further complained to Defendants KAATZ and REEVES about the waste of government funds, personnel, and resources at Defendant VA, caused by Defendants refusal to allow Plaintiffs to continue their research while the grant was still active and Defendants were receiving funds for said grant.

73. Plaintiffs' complaints regarding the retaliation they suffered, including the waste of government resources, were of public concern and protected by the First Amendment to the U.S. Constitution.

74. The retaliation for Plaintiffs' exercise of their right to free speech was a substantial or motivating factor in Defendants KAATZ and REEVES adverse employment actions against Plaintiffs, which culminated in the termination of Plaintiffs on the basis of "lack of work."

75. This is despite, upon information and belief the "Grant" Plaintiffs were working on was active for almost six (6) months after their termination, and there was still plenty of work left to do on the Grant.

76. Defendants' KAATZ and REEVES acts were designed solely to threaten, intimidate, and chill the exercise of free speech under the First Amendment.

77. A violation of the First Amendment rights of free speech constitutes irreparable harm.

78. Defendants KAATZ and REEVES have conspired to retaliate against Plaintiffs for the exercise of their First Amendment rights.

79. Defendants KAATZ and REEVES substantial interference with Plaintiffs' right to free speech does not serve a compelling governmental interest.

80. Terminating Plaintiffs was not the least restrictive means of accomplishing any compelling governmental interest.

81. Defendants KAATZ and REEVES violation of Plaintiffs' First Amendment rights has harmed, and is continuing to harm, Plaintiffs and will have an unlawful chilling effect on Plaintiffs' and others' free speech rights as secured by the First Amendment to the United States Constitution.

82. Defendants KAATZ and REEVES unlawful actions caused Plaintiffs harm and they are entitled to injunctive relief, and compensatory damages against the individual Defendants, and all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

83. Defendants KAATZ and REEVES are liable for money damages under *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 US 388 (1971) for violating this amendment.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter a judgment in favor of Plaintiffs, and against Defendants KAATZ and REEVES for Damages in whatever amount Plaintiffs are found to be entitled, including but not limited to: Plaintiffs' reinstatement to their appointment, an award of lost wages and the value of fringe benefits, past and future, costs, interest, attorney fees, compensatory damages as allowed for under the law, and an order awarding Plaintiffs any other equitable relief as this Honorable Court deems appropriate at the time of final judgment.

## COUNT II

### ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706
### Against Defendants VA and JDDVAMC

84. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

85. By statute, Defendant VA is required to promulgate regulations that control the investigation of research misconduct allegations.[3]

86. Defendant VA has done so, through the VA Handbook 1058.2.

87. As shown above, the VA Handbook states that employees to participate in "good faith" research misconduct inquiries. VA Handbook 1058.2, Section 8.b.

---

[3] The VA Handbook 1058.2 is promulgated under the Federal Policy on Research Misconduct, 65 Fed Reg 76260 (2000), which, upon information and belief was later codified into 42 CFR Part 93. The cited authority is 42 U.S.C. §§ 216, 241, and 289b.

88. Under VA Regulation 38 CFR 0.735-12(b), VA employees are to testify "freely and honestly" in disciplinary matters.

89. "Informants," like Plaintiffs, are to be protected from any retaliation. VA Handbook 1058.2, Section 8.c.

90. Instead of protecting Plaintiffs, Defendants VA and JDDVAMC, by and through their employees, ensured that they were terminated on the pretext of no work being available.

91. Plaintiffs attempted to appeal these personnel actions but were informed, by Defendant VA and its employees, that they had no right to do so.

92. Plaintiffs' grievances on these actions have been summarily rejected.

93. As such all administrative processes and procedures have been exhausted.

94. Defendant VA's failure to follow its own statutes or regulations is a violation of the Administrative Procedures Act. 5 U.S.C. § 701-706.

95. Defendants VA and JDDVAMC's actions in terminating Plaintiffs was arbitrary, capricious, retaliatory, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

96. Defendants VA and JDDVAMC's actions in terminating Plaintiffs were contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B).

97. Defendants VA and JDDVAMC's actions in terminating Plaintiffs were done without observance of procedure established by law and Defendants own regulations and policies. 5 U.S.C. § 706(2)(D).

98. Defendants VA and JDDVAMC's actions are in excess of statutory jurisdictional authority. 5 U.S.C. § 706(2)(c).

99. Defendants VA and JDDVAMC's actions in terminating Plaintiffs were unwarranted by the facts. 5 U.S.C. § 706(2)(F).

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter a judgment in favor of Plaintiffs, and against Defendants VA and JDDVAMC for Damages in whatever amount Plaintiffs are found to be entitled, including but not limited to: any and all damages as allowed for under the law, and an order awarding Plaintiffs any other equitable relief as this Honorable Court deems appropriate at the time of final judgment.

## COUNT III

### DECLARATORY AND INJUNCTIVE RELIEF
### (Declaratory Judgment Act, 28 U.S.C. § § 2201-2202)

100. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

101. This is an actual controversy within this Court's jurisdiction.

102. Defendants' unilateral and retaliatory termination of Plaintiffs creates an actual controversy within the meaning of 28 U.S.C. § 2201(a)(2012).

103. Defendants' unlawful actions caused Plaintiffs harm and they are entitled to injunctive and declaratory relief, and all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

Wherefore, Plaintiffs request this Honorable Court grant injunctive and declaratory relief requiring Plaintiffs' reinstatement to their appointment, an award of lost wages and the value of fringe benefits, past and future, costs, interest, attorney fees, compensatory damages as allowed for under the law, and an order awarding Plaintiffs any other equitable relief as this Honorable Court deems appropriate at the time of final judgment.

## COUNT IV-
## STATE CLAIM
## VIOLATION OF PUBLIC POLICY

104. Plaintiffs reallege and incorporate the allegations of the preceding paragraphs, as if fully set forth herein.

105. As stated above, this Honorable Court has jurisdiction over this claim under 28 U.S.C. § 1367 and 1346.

106. Defendants, through their agents, servants, or employees, violated the VA Handbook, and/or terms, conditions, rules and regulations promulgated by the U.S. Department of Veterans Administration, and other applicable federal law.

107. Defendants, through their agents, servants, or employees, violated the VA Handbook 1058.2, Section 5 and 8 when they attempted to exert pressure on Plaintiffs to provide untruthful testimony, amounting to perjury that would help their research misconduct investigation of Dr. Kreipke.[4]

108. Plaintiffs were to "cooperate honestly and forthrightly with those conducting" the "Investigation." VA Handbook 1058.2, Sections 5.e, and 8.b.

109. Plaintiffs provided only truthful testimony.

110. Plaintiffs' refused to commit perjury while testifying under oath.[5]

---

[4] The VA Handbook 1058.2 is promulgated under the Federal Policy on Research Misconduct, 65 Fed Reg 76260 (2000), which, upon information and belief was later codified into 42 CFR Part 93. The cited authority is 42 U.S.C. §§ 216, 241, and 289b.

[5] MCLA § 750.422. Perjury committed in courts—Any person who, being lawfully required to depose the truth in any proceeding in a court of justice, shall commit perjury shall be guilty of a felony, punishable, if such perjury was committed on the trial of an indictment for a capital crime, by imprisonment in the state prison for life, or any term of years, and if committed in any other case, by imprisonment in the state prison for not more than 15 years.

111. As a result of Plaintiffs' cooperation, Defendants and Defendants' employees were required protect "Informants" like Plaintiffs' from retaliation. VA Handbook 1058.2, Sections 5.f and 8.c.

112. Defendant VA and JDDVAMC's management retaliated against Plaintiffs in whole or in part for the testimony they provided when engaging in a protected activity as described above.

113. Plaintiffs were "Informants" to be free from "retaliation" for their cooperation "with an Inquiry or Investigation of research misconduct." VA Handbook 1058.2, Section 5.f, and 5.p.[6]

114. This retaliation culminated in Plaintiffs termination.

115. As a direct and proximate result of Plaintiffs' honest testimony and cooperation with the research misconduct investigation, Plaintiffs were terminated and suffered, financial distress including the loss of benefits, reputation, stature, earning capacity, ability to work, and will suffer these losses in the future.

116. As a direct and proximate result of Defendants' violations stated above, Plaintiffs have, also, suffered depression, emotional and physical distress, mental and physical anguish, humiliation, embarrassment, and will suffer these problems in the future.

117. As a direct and proximate result of this unlawful retaliation and termination, Plaintiffs have, also, suffered emotional pain and mental anguish, together with serious economic

---

[6] 5.f **Informant.** An Informant is on who makes an allegation *or cooperates* with an Inquiry or Investigation of research misconduct.

5.p **Retaliation.** Retaliation is taking or threatening to take adverse action within one's authority against an Informant in response to a good faith and reasonable allegation *or cooperation* with an Inquiry or Investigation of research misconduct. An adverse action may include an intentional failure to take warranted action. (Emphasis Added). VA Handbook 1058.2, Section 5.f, and 5.p.

hardship, and special damages associated with their efforts to obtain alternative employment in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter a judgment in favor of Plaintiffs, and against Defendants, jointly and severally for Damages in whatever amount Plaintiffs are found to be entitled, including but not limited to: Plaintiffs' reinstatement to their appointment, an award of lost wages and the value of fringe benefits, past and future, costs, interest, attorney fees, compensatory damages as allowed for under the law, and an order awarding Plaintiffs any other equitable relief as this Honorable Court deems appropriate at the time of final judgment.

**AKEEL & VALENTINE, PLC**

By: /s/ Shereef H. Akeel
Shereef H. Akeel P54345
S. Hussain Akbar P67967
Counsel for Plaintiffs
888 West Big Beaver Road
Suite 910
Troy, MI 48084
Telephone: (248) 269-9595

DATED: February 5, 2014