UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN GRAVES and
ANTHONY KROPINSKI,

    Plaintiffs,

v.

DEPARTMENT OF VETERANS
AFFAIRS, JOHN D. DINGELL
VETERAN ADMINISTRATION
MEDICAL CENTER, PAMELA
REEVES, M.D., and GLENN
KAATZ, M.D.,

    Defendants.

Case No. 13-cv-14140
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

## **OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [8]**

Plaintiffs Justin Graves and Anthony Kropinski are former employees of the John D. Dingell Veteran Administration Medical Center. This lawsuit arises from the fallout of a research misconduct investigation of Plaintiffs' lab supervisor. Plaintiffs allege that Defendants—the Department of Veterans Affairs, the John D. Dingell Veteran Administration, and their superiors Pamela Reeves, M.D. and Glenn Kaatz, M.D.—pressured them to give false testimony against their supervisor and then retaliated against them in response to their truthful testimony. Plaintiffs' First Amended Complaint ("FAC") alleges violation of their First Amendment rights and asserts claims under the Administrative Procedure Act, Declaratory Judgment Act, and "State Public Policy." (Dkt. 7.) Plaintiffs seek reinstatement to their former positions and an award of lost wages and past and future benefits. This matter is before the Court on Defendants' Motion to Dismiss the FAC. (Dkt. 8.)

Having reviewed the parties' motions and responses, the Court finds that oral argument will not aid in resolving the pending motions. *See* E.D. Mich. LR 7.1(f)(2). The Court finds that the Civil Service Reform Act provides exclusive administrative remedies for the wrongs alleged in Counts I and II; Count IV fails to state a claim; and, the Declaratory Judgment Act claim in Count III cannot by itself be a source of federal jurisdiction. In sum, Plaintiffs chose the wrong forum to assert their claims. Therefore, Defendants' motion is GRANTED.

## I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff "must allege 'enough facts to state a claim of relief that is plausible on its face.'" *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means that "the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation and internal quotation marks omitted).

In evaluating a motion to dismiss, the court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). The court "need not, however, accept unwarranted factual inferences." *Id.* (citing *Twombly*, 550 U.S. at 570). Nor will the court entitle

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to an assumption of truth. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II. FACTUAL BACKGROUND

The following facts are taken from the allegations in the First Amended Complaint ("FAC"), which the Court takes as true for the purpose of a motion to dismiss.

On May 20, 2012, the Department of Veterans Affairs John D. Dingell Medical Center ("Medical Center") appointed Plaintiffs Justin Graves and Anthony Kropinski to temporary excepted positions[1] as Biological Science Technicians pursuant to 38 U.S.C. 7405(a)(1). (Dkt. 7-1, FAC Ex. A, Appointment Letter, at 2–5.) Plaintiffs were assigned to Dr. Christian Kreipke's animal research study. (Appointment Letter at 4.)

A few days before Plaintiffs' official appointment, the Medical Center had initiated an investigation of Dr. Kreipke for research misconduct. (Dkt. 7, FAC at ¶ 21.) On August 15, 2012, the Medical Center convened a formal investigation panel ("the panel"). (*Id.* at ¶ 25.) Plaintiffs allege that after the panel was created, Defendants "created a hostile work environment" with the intent to "intimidate Plaintiffs into complying with Defendants' goal to find Dr. Kreipke guilty of research misconduct." (*Id.* at ¶¶ 26, 29.) According to Plaintiffs, Defendants "made false claims" that Plaintiffs had destroyed other researchers' equipment and experiments; confiscated Plaintiffs' computers; forced Plaintiffs to work in a small, overheated

---

[1] A "temporary excepted" federal employee is excluded from the competitive service and therefore does not receive all of the same benefits and employment protections as employees serving in permanent positions. *See* 5 U.S.C. 7511.

3

office without access to their computers or data; and "brought an individual to the [Medical Center], a Mr. Christian Reynolds, who started the proceedings against Dr. Kreipke, and who had previously threatened individuals in Plaintiffs' lab with physical harm, in order to harass and intimidate Plaintiffs." (*Id.* at ¶ 30.)

Plaintiffs provided testimony to the panel at an administrative hearing on November 1, 2012. (*Id.* at ¶ 40.) Their testimony "was not damaging" to Kreipke; rather, it revealed the alleged hostile work environment created by Defendants, "disclosed the bias of the original 'Informant,'" and implicated a different investigator in the research misconduct. (*Id.* at ¶ 44.) Plaintiffs allege that they were subjected to intimidation and pressured to lie during the hearing; and, that Defendants accused them of misconduct, told them they should be watching out for themselves, and "attempt[ed] to manipulate or change Plaintiffs' testimony when read back to Plaintiffs . . . ." (*Id.* at ¶¶ 47, 48.)

Shortly after testifying, Plaintiffs "complained about Defendants['] refusal to allow them to continue to work on the grant and the resulting waste of government resources and taxpayer funds." (*Id.* at ¶ 50.) Plaintiffs allege that they were subjected to increased retaliation as a result of their complaints and truthful testimony at the hearing. (*Id.* at ¶ 49.) They also allege that their confidential documents "were left in plain sight," that an informal meeting with Defendant Kaatz resulted in unsatisfactory suggested remedies, that Defendant Kaatz initiated an attendance investigation against Plaintiffs after they filed a Step Two formal administrative grievance, and that Kaatz "summarily rejected" the grievance. (*Id.* at ¶ 52.)

Finally, Plaintiffs were terminated on April 1, 2013, allegedly as a final act of retaliation. (*Id.* at ¶ 59.) Defendant Reeves told them the termination was due to a lack of work (Dkt. 7-1, Termination Letters), but Plaintiffs say that the grant was to remain active until at least October

2013. (FAC at ¶ 57.) They say that they were rebuffed after seeking review of their terminations under the grievance procedure (*Id.* at ¶ 61), and through the Merit Systems Protection Board (*Id.* at ¶ 64).

Plaintiffs filed suit in this Court on September 27, 2013. (Dkt. 1.) They filed an amended complaint on February 5, 2014. (Dkt. 7.) The First Amended Complaint asserts the following claims: violation of Plaintiffs' First Amendment rights (Count I); violation of the Administrative Procedure Act ("APA") (Count II); a demand for declaratory and injunctive relief under the Declaratory Judgment Act (Count III); and a "State Claim for Violation of Public Policy" (Count IV). (*See* Dkt. 7.)

## III. ANALYSIS

Defendants challenge each of Plaintiffs' four claims. The Court finds that Counts I and II, the First Amendment and APA claims, are displaced by the Civil Service Reform Act. The Court further finds that Count IV, the "State Public Policy" claim, is based in tort but Plaintiff has not stated a claim under the Federal Tort Claims Act. Having dismissed all grounds for federal subject matter jurisdiction, the Court finds that Count III, under the Declaratory Judgment Act, must also be dismissed because it does not create an independent ground for jurisdiction.

### A. The Civil Service Reform Act

In 1978, Congress created the Civil Service Reform Act ("CSRA") to replace the old civil service system, an "outdated patchwork of statutes and rules built up over almost a century." *United States v. Fausto,* 484 U.S. 439, 444, (1988) (internal quotation marks and citation omitted). Recognizing "the haphazard arrangements for administrative and judicial review of personnel action" that often involved appeals of agency decisions to the district courts, Congress enacted the CSRA as a remedial measure so as to "avoid[] an unnecessary layer of

judicial review in lower federal courts, and [e]ncourage[] more consistent judicial decisions . . . ." *Id.* at 444, 449. By enacting the CSRA, Congress created "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445.

Finding that the CSRA represents a comprehensive and "elaborate remedial scheme that has been constructed step by step, with careful attention to conflicting policy considerations," the Supreme Court has held that the CSRA provides the exclusive remedy to federal employees for claims challenging adverse employment actions. *Bush v. Lucas*, 462 U.S. 367, 368, 388, (1983); *see Alder v. Tennessee Valley Auth.*, 43 F. App'x 952, 953 (6th Cir. 2002); *Sarullo v. U. S. Postal Serv.* 352 F.3d 789, 794–95 (3d Cir. 2003) ("The CSRA provides a comprehensive statutory scheme which enables federal employees to obtain remedies for prohibited personnel practices engaged in by federal agencies.")

"The extent of review available [under the CSRA] turns on the severity of the personnel action and the rank of the employee." *Krafsur v. Davenport*, 736 F.3d 1032, 1034 (6th Cir. 2013). Federal employees may be "covered"—meaning the CSRA is their exclusive remedy— under certain sections of the Act but not others. The Act provides administrative remedies for actions within two categories: adverse actions and prohibited personnel practices. *Id.* Adverse actions "are the most serious the government may take against its employees," such as removal, suspension, and reduction in pay. *Id.* (citing 5 U.S.C. § 7521). Prohibited personnel practices "are less serious than adverse actions." *Id.* They include violations of "any law, rule, or regulation implementing, or directly concerning" the CSRA's merit system principles, which "entitle employees to fair and equitable treatment in all personnel management, to insist upon

6

proper regard for . . . constitutional rights, and to prohibit 'arbitrary action' . . . ." *Id.* (citing 5 U.S.C. § 2301; 2302).

### 1. Plaintiffs have a remedy under the CSRA.

Defendants argue that Counts I and II, even if properly construed under the First Amendment and the APA, fall within the exclusive confines of the CSRA, 5 U.S.C. 2302. (Dkt. 8, Def.'s Br., at 4–5.)

Plaintiffs respond that, because of their status as temporary excepted employees, they are not covered by the CSRA. (Dkt. 12, Pl.'s Resp. Br. at 2.) Plaintiffs point out that Chapter 75 of the CSRA, which provides remedies for "adverse actions," "does not apply to an employee who holds a position within the Veterans Health Administration which has been excluded from the competitive service by or under a provision of title 38, unless such employee was appointed to such position under § 7401(3) of such title." 5 U.S.C. 7511(b)(10). Plaintiffs were not appointed to their positions under § 7401(3); rather, they were appointed under 38 U.S.C. § 7405(a)(1)(D), which provides that the Veterans Health Administration may employ temporary, full-time medical support personnel "without regard to civil service or classification laws, rules, or regulations." 38 U.S.C. § 7405(a). Therefore, Plaintiffs assert, they are not covered employees and the CSRA does not displace their claims.

The Court agrees that Plaintiffs are excluded from some of the protections and remedies afforded to other civil servants under the CSRA. But this does not mean that Plaintiffs have no remedy under the CSRA. Plaintiffs have overlooked an amendment that provides that they are considered "employees" in certain limited circumstances. To this end, 5 U.S.C. § 2105(f) provides that "employees appointed under Chapter 73 or 74 of title 38 shall be employees" for purposes of various sections under the CSRA, including § 2302, which governs prohibited

personnel practices. If Plaintiffs seek review of a "prohibited personnel practice" under § 2302, CSRA remedies are available to them. 5 U.S.C. § 2105(f).

The question for the Court now becomes whether Chapter 75, which says Plaintiffs are not covered, should trump § 2105(f), which says they are. The Ninth Circuit faced the same question in *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008). In that case, the plaintiff, a part-time surgeon at a VA hospital, argued he did not fall under the CSRA because he was hired pursuant to 38 U.S.C. § 7405(a)(1), the same provision Plaintiffs were hired under. (*See* Pl.'s Resp. Br. at 1.) The court clarified that § 2105 must govern if there was any tension between sections 2105 and 7405:

> In effect, § 2105(f) is an exception to a carve-out. The two sections should be read together to say that the Secretary may hire certain [temporary full time VA] employees; such employees are hired without regard to the civil service classification law, rules or regulations, except that, such [temporary full time] employees will be treated as employees for various purposes, including § 2302. Congress could not have made it clearer that [temporary full time] VA employees must pursue claims of "prohibited personnel practices" through CSRA grievance procedures.

*Id*. at 1246–47. *See also Yu v. United States Dep't of Veterans Affairs*, No. 08-933, 2011 U.S. Dist. LEXIS 71995 (W.D. Pa. July 5, 2011 ) ("Under section 2105(f) of the CSRA . . ., part-time VA physicians are considered protected employees in certain limited circumstances, i.e., where a "prohibited personnel practice" has been taken against them.") The Court finds this analysis persuasive here. If Plaintiffs' claims relate to acts that fall within § 2302's prohibited personnel practices, Plaintiffs are covered by the CSRA and have remedies under the Act. The Court thus turns to the acts at issue in the Complaint.

For the purpose of the CSRA, prohibited personnel practices include taking a personnel action that violates "any law, rule, or regulation . . . concerning . . . the merit system principles in § 2301," which states employees should be treated "with proper regard for their . . .

8

constitutional rights" and "protected against arbitrary action." 5 U.S.C. § 2301. The act also defines specific acts that constitute prohibited personnel practices in 5 U.S.C. § 2302.

If an employee is subjected to a prohibited personnel practice, he or she must bring grievances to the Office of Special Counsel first. 5 U.S.C. § 1214(a)(1)(A). The Special Counsel must determine "whether there are reasonable grounds to believe that a prohibited personnel practice has occurred" and report its conclusion to the agency. 5 U.S.C. § 1214(b)(2)(B). If the agency does not take action to correct the prohibited personnel practice, the Special Counsel may petition the Merit Systems Protection Board ("MSPB") for remedy. 5 U.S.C. § 1214(b)(2)(C). If the MSPB's final decision "adversely affects" the employee, he or she may seek judicial review. 5 U.S.C. § 1214(c). The United States Court of Appeals for the Federal Circuit has "exclusive jurisdiction" to review final determinations from the MSPB. 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7703.[2] But if the Special Counsel finds that the complaint lacks merit, the employee shall receive an explanation as to why the investigation is terminated, but will receive no further redress. 5 U.S.C. § 1214 (2)(A).

Plaintiffs claim their constitutional rights were violated and that they were terminated arbitrarily and not in accordance with APA standards. (*See* FAC.) These alleged actions are violations of the merit principles described above which expressly prohibit unconstitutional and arbitrary conduct. Therefore, these acts would qualify as prohibited personnel practices under § 2302 and § 2301. As such, Plaintiffs' "remedy, if any, lies within the CSRA procedures." *Mangano,* 529 F.3d at 1246; *Yu*, 2011 U.S. Dist. LEXIS 71995, at *17. In other words, in order to follow proper administrative procedure, Plaintiffs should have brought their complaint before

---

[2] The only exceptions are discrimination claims under the Civil Rights Act of 1964, the Age Discrimination Act of 1967, and the Fair Labor Standards Act of 1938. 5 U.S.C. § 7703(b)(1)(B)(2). Plaintiffs have not asserted any such claims in this lawsuit.

the Special Counsel, instead of directly to the MSPB as alleged in the FAC. Plaintiffs do not allege any effort to approach the Special Counsel in the FAC. And even if they did reach the MSPB through the Special Counsel, this court could not review the MSPB's decision because the Federal Circuit has exclusive jurisdiction.

The Court notes that some of the actions alleged in the complaint may be characterized as whistleblowing activities under § 2302(b)(8) or § 2302(b)(9)(A)(i). These sections cover a "personnel action taken with respect to any employee" because of "any disclosure of information" that he or she reasonably believes evidences "gross mismanagement [or] a gross waste of funds" or taking "personnel action against any employee" because of "the exercise of any . . . grievance right granted by any law, rule, or regulation with regard to remedying" one of those violations. Plaintiffs describe complaining to Defendants Kaatz and Reeves about the waste of government funds, personnel, and resources caused by the retaliation. (FAC ¶ 50.) They also allege that they were terminated, at least in part, in retaliation for those comments. (*See id*. at ¶ 52.)

Congress has provided a different procedural path for such violations. It has given employees alleging whistleblowing violations a right to seek review from MSPB even if the Special Counsel declines to investigate or seek corrective action, whereas an employee alleging some other prohibited practice would need to await findings from the Special Counsel and action (or lack thereof) from the agency defendant. *See* 5 U.S.C. 1214(a)(1)(D)(3). But the section clarifies that even employees alleging whistleblowing violations must approach the Special Counsel before seeking review from the MSPB. 5 U.S.C. § 1214(a)(3) ("[A]ny such employee . . . shall seek corrective action from the Special Counsel before seeking corrective action from the Board."). Again, Plaintiffs do not allege that they approached the Special

Counsel with any of their grievances. And the whistleblowing provisions also provide that judicial review is exclusive to the Federal Circuit. 5 U.S.C. § 7703.

Plaintiffs were covered by and had a remedy under the CSRA for the actions alleged in the Complaint. Accordingly, the Court turns to whether that remedy is exclusive.

### 2. Plaintiffs' CSRA remedy displaces their *Bivens* and APA claims.

Plaintiffs purport to bring Count I of this action under *Bivens*. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 390 (1999), the Supreme Court created a federal cause of action against government officials for certain types of constitutional violations. But "*Bivens* actions do not cover every constitutional right and do not apply in every context." *Krafsur v. Davenport*, 736 F.3d 1032, 1035 (6th Cir. 2013). Specifically, *Bivens* does not provide a cause of action where an "alternative, existing process" provides a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v Robbins*, 551 U.S. 537, 550 (2007). In *Bush v. Lucas*, 462 U.S. 367, 368 (1983), the Supreme Court found that the CSRA provided "comprehensive procedural and substantive provisions giving meaningful remedies against the United States" for personnel decisions covered by the Act and the courts should not "supplement" those procedures with remedies under *Bivens*.

Even in the absence of an alternative remedy, a plaintiff may not be able to bring a *Bivens* claim if the court perceives "special factors counseling hesitation before authorizing a new kind of federal litigation." *Wilkie*, 551 U.S. at 550. One such factor in the CSRA context is the risk of interfering with "an elaborate remedial system that [Congress] constructed step by step." *Bush*, 462 U.S. at 388. Congress "is in a far better position than a court" to balance the benefits of new types of litigation between federal employees against possible costs, such as diverting the

11

attention of managerial personnel who must defend their decisions on a separate review track, that could dampen "the efficiency of the civil service." *Id*. at 388–89.

Accordingly, the Sixth Circuit has since held that "[i]n the field of federal employment even if no remedy at all has been provided by the Act, courts will not create a *Bivens* remedy." *Jones v. TVA*, 948 F.2d 258, 264 (6th Cir. 1991). Indeed, "*Bush* does not turn on whether Congress has provided complete relief, considerable relief, or little relief. It turns on the special features of the federal workplace, features that make judicial interference with Congress's fine-tuned judgments inappropriate." *Krafsur*, 736 F.3d at 1036. Under *Krafsur*, Plaintiffs cannot bring a *Bivens* action.

Turning to Count II, Plaintiffs claim that Defendants failed to follow VA regulations in violation of the APA, 5 U.S.C. § 701–706. Plaintiffs allege that Defendants' actions violated every subsection of 5 U.S.C. § 706(2). Defendants respond that all of these claims are, like the *Bivens* action, precluded by the CSRA.

The CSRA is the "sole track for challenging personnel decisions on statutory grounds." *Krafsur*, 736 F.3d at 1037 (citing *United States v. Fausto*, 484 U.S. 439, 455 (1988)). The Supreme Court in *Fausto* held that although the CSRA does not contain an explicit exclusivity provision, its comprehensive system of review and the Act's purpose of replacing "haphazard arrangements for administrative and judicial review of personnel decisions" provide "ample" grounds for discerning the Act's remedial measure as exclusive in regards to the statutory scheme. *Id*. at 444–52. And the Sixth Circuit recently noted, in finding that the CSRA displaced a claim under 5 U.S.C. § 706 (the APA), that the *Bivens* analysis in *Bush* further strengthened a finding of statutory exclusivity under the CSRA because it would be "strange if the [CSRA] sent a strong enough message of exclusivity to displace a constitutionally rooted remedy but not to

displace remedies created by Congress." *Krafsur*, 736 F.3d at 1037. Accordingly, Plaintiffs cannot pursue an APA claim in district court because the CSRA offers an exclusive track for challenging personnel decisions.

### 3. The Court will not apply a heightened standard of clarity to the CSRA remedy.

Plaintiffs attempt to avoid CSRA exclusivity by relying on *Webster v. Doe*, 486 U.S. 592, 603 (1988), which held that a court should not interpret a statute to "deny any judicial forum for a colorable constitutional claim" unless Congress's "intent to do so [is] clear." (*See* Pl.'s Resp. Br. at 2.) *Krafsur* is instructive on this point as well: the plaintiff in that case did not have a guaranteed path to court, for he first had to file a grievance with the Special Counsel and then the MSPB before reaching judicial review in the Federal Circuit. 736 F.3d at 1037. Still, the Sixth Circuit declined to apply the heightened standard from *Webster*, reasoning that *Webster* and its progeny "involved a *total* denial of judicial review for constitutional claims." *Id*. (emphasis in original.) By contrast, the plaintiff in *Krafsur* still had a pathway, albeit a limited one, to judicial review if he obtained clearance from the Office of Special Counsel. *Id.* at 1039. Therefore, the court found the impediments to judicial review were too slight to require the exception to CSRA exclusivity. The same is true here. The Court is bound by *Krafsur* and will not use a heightened standard of clarity when the pathway to judicial review is merely limited.

Counts I and II will be dismissed.

### B. State Claim for Violation of Public Policy

In Count IV, Plaintiffs allege a "State Claim for Violation of Public Policy" against all Defendants. (FAC ¶ 104–117.) In this claim, Plaintiffs seek to enforce the VA's internal handbook against Defendants but assert allegations that sound in tort: "As a direct and proximate result of Defendants' violations . . . Plaintiffs have, also, suffered depression, emotional and

physical distress, mental and physical anguish, humiliation, embarrassment, and will suffer these problems in the future." (FAC ¶ 116.) Defendants respond that Plaintiffs have not identified a waiver of sovereign immunity that would allow them to bring this claim. (Def.'s Br. at 10.)

In fact, Plaintiffs have no choice but to bring their state tort claim through the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2679(a); *see also* 28 U.S.C. § 2674; 28 U.S.C. § 1346(b). The FTCA provides the exclusive remedy "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(a). Plaintiffs admit that Count IV "is a tort claim." (Pl.'s Resp. Br. at 20.) Yet Count IV is pled as a state claim, rather than an FTCA claim, in the First Amended Complaint. (*See* FAC ¶ 104.) Plaintiffs clearly understand this defect, for they have recast Count IV as an FTCA claim in their response to Defendants' motion to dismiss. (Pl.'s Resp. Br., at 19.)

Plaintiffs have not obtained leave to amend the Complaint for a second time. *See Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Thus, their new legal theory is only helpful to the extent that it finds support in the allegations in the First Amended Complaint. *See Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("[W]e must assume that [plaintiff] can prove the facts alleged in its amended complaint. It is not, however, proper to assume that [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged."); *see also Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3rd Cir. 1988).

As it stands, the First Amended Complaint suffers from a significant flaw: Plaintiffs did not name the United States as a defendant. (*See* FAC.) "Failure to name the United States as

defendant in an FTCA suit results in a fatal lack of jurisdiction." *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990). As such, the Court finds that it lacks jurisdiction over Count IV and therefore Count IV should be dismissed.

Moreover, Plaintiffs have not pled facts to show that they have exhausted their administrative remedies. "The Federal Tort Claims Act (FTCA) provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993). Therefore, a prerequisite to any FTCA claim is that the plaintiff "shall have first presented the claim to the appropriate Federal agency," in this case the Department of Veterans Affairs, and "his claim shall have been finally denied by the agency in writing," or the plaintiff must plead that the agency failed "to make final disposition of the claim within six months after it is filed . . . ." 28 U.S.C. 2675(a).

Plaintiffs do not allege that their tort claims were presented to the Department and decided in writing or that the agency failed to make final disposition of the tort claims within six months after filing. (*See* FAC ¶ 104–117.) If anything, Plaintiffs allege facts to demonstrate that they attempted to present their APA and First Amendment claims to the Department (albeit without following CSRA-required procedures) (*see* FAC ¶ 64), but the Court cannot infer that this correspondence also included the tort claims.

Count IV will be dismissed.

**C. Declaratory Judgment Act**

In Count III, Plaintiffs assert that "Defendants' unilateral and retaliatory termination of Plaintiffs creates an actual controversy within the meaning of 28 U.S.C. 2201(a)," the Declaratory Judgment Act. (FAC ¶ 102.) As Defendants' argue, "[t]he Declaratory Judgment Act

does not provide an independent basis for jurisdiction. Rather, it provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists." *One Beacon Ins. Co. v. Chiusolo*, 295 F. App'x 771, 775 (6th Cir. Ky. 2008) (citing *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)); (Def.'s Br. at 8). Plaintiffs seemingly agree that an independent basis for subject matter jurisdiction must exist in order for their Declaratory Judgment Act claim to proceed: "both Plaintiffs' First Amendment claim and their APA claim are viable. Therefore, subject matter jurisdiction does exist and Count III of Plaintiffs' [Amended Complaint] should survive." (Pl.'s Resp. Br. at 18.) The Court has already found, however, that it lacks jurisdiction over these claims: the First Amendment and APA claims are displaced by the CSRA, and Plaintiffs have failed to state a claim under the FTCA.

The Court must dismiss Count III.

### D. Plaintiffs' Requests for Leave to Amend and Extension of Service

In their response brief, Plaintiffs request that "[s]hould this Honorable Court, in any way believe that Plaintiffs have failed to state a claim upon which relief may be granted, Plaintiffs respectfully request this Honorable Court to grant leave to . . . amend any deficiency, as justice so requires." (Pl.'s Resp. Br. at 23.) They also request that, with respect to Defendants Kaatz and Reeves, the Court "specify a time within which to serve them . . . [or] extend the time for service." (*Id.* at 22–23.)

As an initial matter, these requests do not comply with several of this Court's directives regarding motion practice. The Court's Electronic Filing Policies and Procedures state that "a response or reply to a motion must not be combined with a counter-motion. Papers filed in violation of this rule will be stricken." E.D. Mich. Local Rules App'x ECF R. 5(e). Additionally,

this Court's Local Rules direct that "[a] party who moves to amend a pleading shall attach the proposed amended pleading to the motion." E.D. Mich. LR 15.1.

In any event, Plaintiffs' request to extend the summons for the FAC is mooted by the dismissal of the FAC; therefore, that request will be denied. *See Hawthorne v. Baptist Hosp., Inc.*, No. 3:06cv5, 2006 U.S. Dist. LEXIS 58998, at *2 (N.D. Fla. Aug. 8, 2006) (granting a motion to dismiss for improper service of process where plaintiff served defendant with "his earlier-dismissed complaint, which had previously been found legally defective, rather than a copy of his amended complaint").

Nor will the Court grant Plaintiffs' inadequate request to amend the complaint. Although Federal Rule of Civil Procedure 15 establishes a liberal policy toward granting leave to amend, a "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (quoting *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010)). Here, Plaintiffs' request for leave to amend consists of exactly the sort of "throwaway language" that does not serve as a motion to amend within the ambit of Rule 15(a). *See Kuyat*, 747 F.3d at 444. Moreover, Plaintiffs did not attach any proposed amendment to their response. (*See* Dkt. 12.) Plaintiffs are "not entitled to an advisory opinion from the court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000)); *accord Kuyat*, 747 F.3d at 444 (holding that the district court did not abuse its discretion by denying leave to amend where "plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint . . . .").

## IV. CONCLUSION

Plaintiffs brought their grievances to the wrong forum. This Court cannot hear their First Amendment and APA claims because the CSRA provides exclusive administrative remedies for the alleged wrongs by Defendants. Plaintiffs have not stated a claim under the Federal Tort Claims Act. And the Declaratory Judgment Act cannot by itself be a source of federal jurisdiction. Accordingly, the Court **GRANTS** Defendants' motion to dismiss.

It is further ordered that the hearing previously scheduled for August 27, 2014 is **CANCELLED**.

**SO ORDERED**.

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE

Dated: August 20, 2014

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 20, 2014.

s/Jane Johnson<br>
Case Manager to<br>
Honorable Laurie J. Michelson